971 F.2d 127
 S. Douglas HOTTINGER, Terry D. Tackett, Timothy W. Tackett, Appellants,
v.
POPE COUNTY, ARKANSAS, Pope County Ambulance Department, Jim
Bob Humphrey, Individually and in his Official Capacity as
Pope County Ambulance Board Member, George Malone, Dr.,
Individually and in his Official Capacity as Pope County
Ambulance Board Member, Billy Newton, Individually and in
his Official Capacity as Pope County Ambulance Board Member,
Johnny Morgan, Individually and in his Official Capacity as
Pope County Ambulance Board Member, Ormond Peters,
Individually and in his Official Capacity as Pope County
Ambulance Department Administrator, Pope County Ambulance
Administrative Board, Appellees.
 No. 91-3633.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 8, 1992.
Decided July 27, 1992.
 
 David Rutledge, Batesville, Ark., for appellant.
 David White, Hot Springs, Ark., for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 As of August 3, 1990, the plaintiffs--Douglas Hottinger, Terry Tackett, and Timothy Tackett--were employed as part-time emergency medical technicians (EMTs) by the Pope County Ambulance Department.[1] On that date, the Department issued an official grooming policy, effective August 15, 1990, which prohibited the wearing of mustaches, beards, and hair of certain lengths by male EMTs.[2] Each of the plaintiffs had facial hair after the effective date of the grooming policy. Consequently, the Department fired them in the fall of 1990 for violating the policy.
 
 
 2
 The plaintiffs then brought this lawsuit under 42 U.S.C. § 1983, claiming that being fired for their failure to comply with the grooming policy infringed upon their liberty interest to control their personal appearance in violation of their substantive-due-process rights. They asked the District Court to invalidate the policy, to impose compensatory and punitive damages, and to reinstate them. Concluding that the grooming policy had a rational relationship to legitimate governmental goals, the District Court[3] granted the defendants' motion for summary judgment. On the plaintiffs' appeal from this decision, we affirm.
 
 
 3
 Our review of the District Court's decision to grant summary judgment is guided by the same standard it used. We will affirm its decision if, after reviewing the record in the light most favorable to the plaintiffs, it reveals no genuine dispute over a material fact and if the defendants are entitled to judgment as a matter of law. The existence of a factual dispute precludes summary judgment only if the dispute is genuine and the fact disputed material.
 
 
 4
 The arguments in this case focus on two decisions: the Supreme Court's decision in Kelley v. Johnson, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), and our decision in Lowman v. Davies, 704 F.2d 1044 (8th Cir.1983). Kelley involved a substantive-due-process challenge to a police department's grooming regulation. The Court assumed that the complaining officer had a liberty interest in his personal appearance, but went on to uphold the policy as not being "so irrational that it [could] be branded 'arbitrary'...." 425 U.S. at 248, 96 S.Ct. at 1446 (citation omitted). In Lowman, we considered the constitutionality of a grooming policy enforced by the Arkansas Department of Parks and Tourism against one of its park naturalists. Relying on Kelley, we held that the Department's policy did not violate substantive due process because its goals of making naturalists recognizable to the public, making them more likely to deter violators of park regulations, and promoting esprit de corps among Department employees were not "wholly arbitrary." 704 F.2d at 1046 (footnote omitted).
 
 
 5
 Our decision in Lowman should easily dispose of this case. As part of their motion for summary judgment, the defendants submitted the affidavits of four Board members indicating that the purpose of the policy was to promote esprit de corps among EMTs, to present a uniform, professional image, and to minimize the possibility of EMTs' hair interfering with the performance of their job duties. While we may not believe that "the regulation is wise, or the best way to meet these goals[,]" we cannot conclude that any of these justifications is "wholly arbitrary." Id. at 1046.
 
 
 6
 Plaintiffs argue, however, that Lowman is not dispositive of their case. In Lowman, we stated that Kelley was controlling "[b]ecause park naturalists had law enforcement duties...." Id. at 1046. Plaintiffs claim they are entitled to a trial on the issue of whether their jobs as EMTs are sufficiently similar to that of park naturalists and police officers to justify Kelley's application to their case. Despite the language quoted from Lowman, we disagree. Our decisions since Lowman have made it clear that "substantive-due-process claims should be limited to 'truly irrational' governmental actions." Chesterfield Development Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir.1992) (quoting Lemke v. Cass County, Nebraska, 846 F.2d 469, 472 (8th Cir.1987) (en banc) (per curiam) (Arnold, J., concurring)). Whatever difference there may be between the duties of police officers and park naturalists in contrast to EMTs, this difference does not make grooming regulations "truly irrational" when applied to the latter group. EMTs are uniformed public employees who need to be easily recognizable.
 
 
 7
 Similarly, the plaintiffs are not entitled to a trial on the issue of whether the defendants adopted the policy to suit their own personal preferences or for the reasons the four Board members indicated in their affidavits. Although the plaintiffs claim that the reasons provided by the defendants (which we have already held are not wholly arbitrary) were not the real reasons for the policy, they have not presented any evidence of their own contradicting the defendants' affidavits. Moreover, the distinction between the defendants' supposedly improper personal preferences and the reasons given by the defendants to justify their policy eludes us. The fact that the EMTs are in uniforms at all or that their uniforms are a particular style in some sense reflects the personal preferences of the defendants. Nevertheless, no one would seriously argue that requiring the plaintiffs to wear a uniform of a particular style violates their substantive-due-process rights. Defendants are the officials responsible under local law for operation of the ambulance service. They have the power to treat hair, or the lack of it, as part of the EMTs' uniform. Their policy may be mistaken or even silly, but it doesn't violate the Fourteenth Amendment.
 
 
 8
 The District Court did not err in granting the defendants' motion for summary judgment. Consequently, its judgment is affirmed.
 
 
 
 [1]
 We refer to the defendants collectively as the Department
 
 
 [2]
 The policy in its entirety reads as follows:
 All EMT personnel shall be neat appearing and well groomed while in uniform. Uniforms shall be kept neat and clean at all times when possible. Care should be taken to notify supervising personnel when uniforms are threadbare or faded. All personnel should report for duty clean shaven with neat and trimmed haircuts. Male personnel shall maintain hairlengths so that there is not hair extending over the collar or extending over one half the ear, with no sideburns longer than the lower lobe of the ear. No employee will wear a beard or mustache while in EMT uniform. No porkchop sideburns are acceptable. Hair will be neatly groomed and will not present a ragged or unkept appearance. Hair coloring if used must appear natural. Any changes that this memo presents from the present policy will take effect August 15, 1990.
 Note: Policy on female grooming and uniforms shall be forthcoming for female employees.
 
 
 [3]
 The Hon. George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas